JAMES F. ETTER AND MARY LOUISE H. ETTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Etter v. Commissioner
Docket No. 22946-87
United States Tax Court
T.C. Memo 1990-552; 1990 Tax Ct. Memo LEXIS 624; 60 T.C.M. (CCH) 1074; T.C.M. (RIA) 90552; October 23, 1990, Filed *624 Decision will be entered for the respondent. Robert M. Moise and B. W. Enlow, for the petitioners. Willard N. Timm, Jr., for the respondent. PARKER, Judge. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 49,265.11 in petitioners' 1982 Federal income tax. The issue for decision is whether petitioner James F. Etter was granted an incentive stock option, taxation of which is governed by sections 421 and 422A, or a nonqualified stock option, taxation of which is governed by section 83. Unless otherwise indicated, all section references are to the Internal *625 Revenue Code, as amended and in effect for the taxable year 1982, and all rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners, James F. and Mary Louise H. Etter, lived in Mt.Pleasant, South Carolina, at the time they filed their petition in this case. Petitioners were cash method, calendar year taxpayers filing a joint Federal income tax return for 1982. All references to petitioner in the singular will be to James F. Etter. Sam Solomon Company, Inc. (hereinafter Solomon Co.) was a publicly owned corporation. Until the merger of Solomon Co. into Service Merchandise Company, Inc. of Nashville, Tennessee (hereinafter Service Merchandise) on August 10, 1982, the stock of Solomon Co. was traded over the counter. Solomon Co. was a general merchandise business which sold its goods through catalog showrooms located in North Carolina, South Carolina, Georgia and Florida. Solomon Co. primarily sold items such as jewelry, home electronic equipment, toys, sporting goods, small *626 appliances, housewares, and luggage. Its retail policy was based on high volume, low-profit-margin sales. The ultimate profit of the corporation depended on a high turnover of goods. Solomon Co.'s fiscal year ended on January 30 or January 31. The corporation's profitability depended on its operating results for the final quarter of each fiscal year. Generally, over 45 percent of its sales and substantially all of its profits were generated in the fourth quarter of its fiscal year. In 1980 Solomon Co. began to experience financial troubles. On August 21, 1980, Solomon Co. filed a petition for relief under Chapter 11 of the Federal Bankruptcy Code. The corporation reported a net loss of $ 2,286,300 for its fiscal year ending January 31, 1981, which translated into a loss per share of $ 1.32. On May 27, 1981, the United States Bankruptcy Court for the District of South Carolina confirmed Solomon Co.'s Modified Plan of Reorganization. Solomon Co. continued to experience financial difficulties throughout 1981. The Creditors' Committee supervising the reorganization became concerned. In the fall of 1981, poor retail sales and limited cash resources forced the company to close *627 its four Florida stores, leaving it with only seven stores in the southeast. It attempted to generate cash through going-out-of-business sales. For its fiscal year ending January 30, 1982, Solomon Co. posted losses of $ 5,529,100, or losses of $ 3.18 per share. Petitioner first came to work for Solomon Co. in September of 1981, and at the time he was hired he was not granted any stock options. By the end of 1981, Solomon Co. had two principal stock option plans in effect. [1] One was the 1980 Stock Option Plan (hereinafter 1980 Plan); the other was the 1981 Incentive Stock Option Plan (hereinafter ISO Plan). The 1980 Plan was a nonstatutory (i.e., nonqualified) stock option plan. It originally authorized the grant of options to purchase up to 50,000 shares, in the aggregate, of Solomon Co.'s $ .10 par value common stock. The board of directors amended this plan on February 11, 1981, to authorize options to purchase up to 100,000 shares. The purchase price of the common stock under each option was to be determined by the board of directors, but it was "in no event [to be] less than the par value of the Common Stock." *628 The ISO Plan authorized certain employees to purchase up to 175,000 shares, in the aggregate, of $ .10 par value Solomon Co. common stock at a price "not less than 100 percent of the fair market value of the Stock at the time the option is granted * * *." The individuals eligible to receive incentive stock options were key employees who were "eligible to receive such options under Section 422A of the Code and who, in the opinion of the Board are from time to time primarily responsible for the management, growth, development and expansion of some part or all of the business of the Company * * *." The ISO Plan provided that the purchase price was to be paid in full on the date of purchase. The ISO Plan also provided that "Options shall be exercised by written notice to the Corporation in the manner set forth in the option agreement." The ISO Plan was adopted (subject to shareholder approval) in October 1981 and amended on February 2, 1982. On February 1, 1982, petitioner and Solomon Co. executed an employment agreement for the position of chief financial officer. That agreement provided that February 1, 1982, was also the "Commencement Date" of petitioner's employment with Solomon *629 Co. [2] Petitioner's employment was to continue through December 31, 1983 (the "Termination Date"). The employment agreement in part provided petitioner with base compensation of $ 65,000 per year, made retroactive to December 15, 1981, and granted him an option to purchase 15,000 shares of Solomon Co. stock: Employer hereby grants to Employee an option to acquire up to 15,000 shares of the $ .10 par value common stock of Employer, at a price of $ 1.00 per share, exercisable at any time prior to the expiration of six months after the Termination Date (such date, six months after the Termination Date, is referred to herein as the "Option Expiration *630 Date"), in accordance with the provisions of the Stock Option Agreement in the form annexed as Exhibit 1 hereto. [3]
Three other employment agreements were executed at approximately the same time as petitioner's -- those for Stanley Weiner, Dennis R. Haydon, and Richard J. Whalen. See n.3, supra. The four employment agreements were negotiated at approximately the same time. Mr. Haydon was involved extensively in the negotiations. Many of the terms in the contracts were the same. However, there *631 were individually crafted provisions on items such as moving expenses and sales of a residence. There were also some important differences in regard to stock options. Of these four employment agreements, the stock option paragraph of Mr. Whalen's agreement was the only one specifying that the option was granted under the 1981 Incentive Stock Option Plan. The minutes of the February 2, 1982, board meeting stated, in part, that "The four employment contracts grant stock options in varying amounts. All options are for a purchase price of $ 1.00 for non-qualified options, or $ 1.25 for incentive stock options." However, the stated purchase price in all four employment agreements was $ 1 per share. Stanley Weiner was hired as senior vice president and chief operating officer. The stock option paragraph of his February 12, 1982, employment agreement was identical to that in petitioner's agreement, with two exceptions. First, Mr. Weiner's option extended to only 25,000 shares. Second, the paragraph concluded: "In addition, Employer shall deliver to Employee 15,000 shares of the $ .10 par value common stock of Employer as soon as practicable after the commencement date." Dennis *632 R. Haydon's position was as executive vice president and chief executive officer. His employment agreement was dated February 1, 1982. The stock option paragraph granted him an option to purchase 50,000 shares. All other language in that paragraph was identical to that in the stock option paragraph of petitioner's employment agreement. Richard J. Whalen was hired as vice president-director of operations. The record does not indicate when he first assumed those duties. His employment agreement was dated February 11, 1982, and his compensation rate was made retroactive to December 15, 1981. The stock option paragraph in Mr. Whalen's agreement provided: Employer hereby grants to Employee under the Employer's 1981 Incentive Stock Option Plan, an option to acquire up to 15,000 shares of the $ .10 par value common stock of Employer, at a price of $ 1.00 per share, exercisable at any time prior to the expiration of six months after the Termination Date (such date, six months after the Termination Date, is referred to herein as the "Option Expiration Date"), in accordance with the provisions of the Stock Option Agreement in the form annexed as Exhibit 1 hereto. Each of *633 the four employment agreements provided as follows: 9. Entire Agreement
This Agreement contains the entire agreement of the parties with respect to its subject matter, supercedes all prior oral and written discussions and understandings, and no waiver, modification or change of any of its provisions shall be valid unless in writing and signed by the party against whom such claimed waiver, modification or change is sought to be enforced. The parties agree that the stock options did not have a readily ascertainable fair market value on the date granted. Solomon Co. stock, however, was traded over the counter. On December 21, 1981, the fair market value of a share of common stock was $ 1 per share. On February 1, 1982, that stock had a fair market value of $ 1.25 per share. On August 10, 1982, Solomon Co. was acquired by and merged into Service Merchandise. [4] On August 19, 1982, Service Merchandise issued a prospectus covering "shares of Common Stock, par value $ 1.00 per share * * *, of Service Merchandise Company, Inc., * * * issuable upon exercise of outstanding stock options * * * granted by [Solomon Co.] under the [1980 Plan] * * *. The ratio of conversion was *634 .4 shares of Service Merchandise stock for each share of Solomon Co. stock that would have been received upon exercise of the option. No other option plan was adopted by Service Merchandise. On September 24, 1982, petitioner exercised his option, paying $ 15,000 to Service Merchandise. Petitioner reported no gain on his 1982 tax return. Respondent issued a notice of deficiency on April 9, 1987, determining that petitioner had compensation income in the amount of $ 99,000 upon the exercise of a nonqualified stock option. Respondent determined that petitioner had unreported ordinary income of $ 99,000 (the difference between the fair market value of the stock on the exercise date ($ 114,000) and petitioner's cost of the shares ($ 15,000)). OPINION The sole issue for decision is whether petitioner's stock option was granted pursuant to a nonqualified stock option plan or whether it was granted *635 pursuant to the 1981 Incentive Stock Option Plan (hereinafter ISO Plan). Respondent says the option was not granted under the ISO Plan and is governed by section 83. Petitioner says the option was granted under the ISO Plan and is governed by sections 421 and 422A. For the reasons stated in our opinion in Haydon v. Commissioner, T.C. Memo. 1990-551, filed this date, the Court finds that petitioner's stock option was not granted pursuant to the ISO Plan and is taxable pursuant to section 83 of the Internal Revenue Code. Since petitioner exercised his option after the merger with Service Merchandise, this case presents one issue that was not involved in Haydon. Solomon Co.'s ISO Plan provided in part: Upon the effective date of any merger, consolidation, reorganization or liquidation of [Solomon] Company with one or more corporations in which the Company is not the surviving corporation, or of a transfer of substantially all of the property or more than eighty percent of the then outstanding shares of the Common Shares of the Company to another corporation, the Plan and any unexercised option granted under the Plan shall terminate *636 unless provision be made in writing in connection with such transaction for the continuance of the Plan and for the assumption of such unexercised options by a successor employer corporation or parent or subsidiary thereof for the substitution for such unexercised options of new options covering shares of such successor corporation, with appropriate adjustments as to number and kind of shares and prices pursuant to Section 425(a) of the Code; in which event the Plan and the unexercised options theretofore granted or the new options substituted therefore shall continue in the manner and under the terms provided in the Plan. Prior to any such termination upon the effective date of any such transaction, the Board may in its discretion permit such optionee under the Plan to accelerate his option and to purchase the full number of shares under his option which he would otherwise have been entitled to purchase during the remaining term of such option. Since petitioner exercised his option after the merger with Service Merchandise and since there is no evidence that Service Merchandise ever adopted Solomon Co.'s ISO Plan, respondent cites this provision as an indication *637 that petitioner's option could not have been granted pursuant to the ISO Plan. Petitioner produced documentation detailing Service Merchandise's adoption of the 1980 Plan, but produced nothing showing the adoption of the ISO Plan. We decline petitioner's invitation to infer the existence of such a document, and on this record we must conclude that Service Merchandise did not adopt Solomon Co.'s ISO Plan. [5] We also conclude that petitioner has not established that his option was granted under an incentive stock option plan. *638 Accordingly, his exercise of his option will be governed by section 83. For the foregoing reasons, Decision will be entered for the respondent. Footnotes
1. There was also a third stock option plan that was not at issue in this case.↩
2. The date originally typed on that agreement was January 1982. Petitioner and Mr. Solomon made a pen-and-ink change to this date and initialed that change. The agreement then provided that the term of employment was to "commence on February 1, 1982↩ (the 'Commencement Date'), and * * * continue through December 31, 1983 (the 'Termination Date') * * *."
3. There was no "Exhibit 1" annexed to the Court's copy of petitioner's employment agreement. The other three employment agreements similarly referred to such an exhibit, but no exhibits were attached to those agreements. The record does not establish whether or not an "Exhibit 1" was ever prepared or ever attached to these four employment agreements. If there was a "Stock Option Agreement," such document would be highly relevant to the issue in this case and should have been produced by petitioner.↩
4. Service Merchandise, like Solomon Co., is a general merchandise business operated through catalog showrooms.↩
5. As in Haydon v. Commissioner, T.C. Memo. 1990-551↩, filed this date, petitioner makes numerous arguments as to the numbers of options under the various stock option plans of Solomon Co., apparently arguing by the process of elimination that petitioner's option had to be under the 1981 ISO Plan. We simply do not have sufficient competent and probative evidence about the various stock option plans, the exercises of options, the forfeitures of options, etc. to accept petitioner's mathematical exercises as facts.